# In the United States Court of Federal Claims

No. 10-48C

(Filed: April 29, 2011)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RICHARD CARTER AND JERRY
GOODWIN, d/b/a R&J FEED,

    *Plaintiffs*,

v.

THE UNITED STATES,

    *Defendant.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER

In its complaint, plaintiff[1] alleges that the United States breached a contractual duty to provide plaintiff with dry milk for use as agricultural feed. Pending is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC").[2] The motion has been fully briefed and we believe oral argument to be unnecessary. For the reasons explained below, we grant in part defendant's motion to dismiss as to four of the five counts in plaintiff's complaint.

---

[1] Although two individuals appear as plaintiffs, because they are doing business as a single entity we refer to them in the singular throughout.

[2] Also pending is plaintiff's motion, styled as a "Notice," seeking to withdraw certain exhibits, which are subject to a protective order in litigation elsewhere, and substitute other exhibits. The government appears to concur with this request, having requested in one of its briefs that the offending documents be stricken. Accordingly, we grant the motion and order the clerk to strike Exhibits E and F attached to Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss filed January 7, 2011.

BACKGROUND[3]

A severe and lengthy drought in 2002–04 caused a shortage of livestock feed, particularly among the western states. In response to the drought and pursuant to 7 U.S.C. § 7285, the United States Department of Agriculture ("USDA") initiated a series of drought relief programs, one of which gave rise to this suit. Under the program, the United States agreed to provide various states with large quantities of powdered skim milk, also known as nonfat dry milk ("NDM"), which the states could in turn make available to livestock producers and feed dealers. Mr. Carter and Mr. Goodwin are cattle ranchers in Wyoming and Utah, respectively, who organized as a feed dealer under the name R&J Feed ("R&J") to take advantage of the NDM program.

The NDM program was administered primarily by the Commodity Credit Corporation ("CCC"), a wholly-owned government corporation designed to aid and support agricultural producers. Each participating state entered into a uniform agreement with the CCC, titled "Nonfat Dry Milk Sales Agreement between the Commodity Credit Corporation and the State of _____." Pursuant to the sales agreement, the CCC would provide the state with NDM at a price of $1 per 21-ton truckload. It also set out a formula for determining the quantity of NDM to which each state was entitled. The CCC also agreed to pay for transportation costs to deliver the NDM to the states.

The standard sales agreement contained certain terms and conditions limiting the states' distribution and the recipients' use of the NDM. For example, each participating state agreed that the NDM would be used only for feeding livestock herds within that state, would not be used for human consumption, and would not be used as a replacement for whey. In addition to "purchasing" and distributing the NDM, participating states agreed to take appropriate action to ensure that only producers of foundation livestock herds received NDM. The USDA, however, retained the responsibility to enforce the limits on the use of NDM acquired by "third parties" other than states and eligible livestock producers.

Each participating state subsequently entered into agreements with feed dealers and livestock producers for the distribution and use of that state's share

---

[3] The pertinent facts are not contested and are drawn from the plaintiff's second amended complaint and the contract documents. We have not considered the exhibits that were subsequently withdrawn. *See* note 2.

of the NDM. Here, the agreement between R&J and the Utah Department of Agriculture and Food contained the same restrictions enumerated above on the use of NDM. After signing such an agreement, a dealer or producer could fill out vouchers issued by the state authorizing receipt of a stated quantity of NDM and requesting a delivery date and location. Such vouchers were issued by and returned to the state and, like the sales agreement, contained the same limitations on NDM use discussed above.

R&J filed suit here in January of 2010, alleging that it had a contractual right to receive NDM and that the United States had breached that agreement. Specifically, R&J alleges it had "acquired rights to possess and control certain stores of NDM" and that the United States had deprived R&J of its legal rights and property "by falsely representing to third parties that Plaintiffs were in violation of the terms of the Program and by . . . instructing those third parties not to make delivery of such NDM to Plaintiffs." Compl. 4-5. The government has filed a motion to dismiss. Before ruling on that motion, we allowed plaintiff to amend its complaint. We deemed defendant's earlier filed motion as responsive to the amended complaint but permitted a supplemental reply from defendant and a supplemental response by plaintiff. R&J's amended complaint seeks over $21 million in damages.

DISCUSSION

R&J alleges five causes of action: breach of implied-in-fact contract, breach of a third-party beneficiary contract, breach of written contract, breach of the covenant of good faith and fair dealing, and equitable estoppel. The government argues that the first four counts of the complaint should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction or, alternatively, RCFC 12(b)(6) for failure to state a claim, because R&J was neither a party to nor a third-party beneficiary of any contract with the United States and thus lacks privity of contract with the United States. As to the final count, the government argues that this court has no jurisdiction over a claim based on estoppel.

When considering a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). We presume that the undisputed factual allegations in the complaint are true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988).

As an initial inquiry, the court must determine the threshold matter of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). If the court lacks jurisdiction, it must dismiss the complaint or that portion of the complaint over which it lacks jurisdiction. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, the government has moved under Rules 12(b)(1) and 12(b)(6). With respect to the former, plaintiff bears the burden of proving that we have subject matter jurisdiction, and we may consider evidence outside the pleadings. *Reynolds*, 846 F.2d at 747-48. Assuming we find jurisdiction, we then consider whether plaintiff has stated any claims upon which relief can be granted. A mere "formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss for failure to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

I.  Plaintiff's Contractual Causes of Action

We turn first to the first four causes of action alleged in plaintiff's second amended complaint, all of which are variations on a theme, namely a breach of contract.[4] Because these claims all presuppose the existence of a contract with the United States—a supposition that, if untrue, vitiates all four claims—we deal with them together. As explained below, we lack jurisdiction over three of these claims because, even assuming all the allegations in the complaint to be true, R&J lacks privity of contract with the United States.[5]

---

[4] Specifically, the claims are for breach of implied-in-fact contract, breach of a third party beneficiary contract, breach of written contract, and breach of the covenant of good faith and fair dealing.

[5] Throughout its briefing, the government intermingles its discussion of privity with the "sovereign act doctrine." We see these doctrines as distinct, as does the government. Def. Reply 3 ("The Government is not raising the sovereign act doctrine described in *Winstar* . . . . Our defense is more fundamental. We are asserting, instead, that there was no contract between R&J and the Federal Government in the first place."). With respect to counts
(continued...)

4

*A.     Privity of Contract*

It is well established that "the government consents to be sued only by those with whom it has privity of contract." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (quoting *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984)). Stated differently, for a plaintiff to sue the United States on a contract claim, it must be in direct privity of contract with the government. *See Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003); *see also Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("The effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity.").

A lack of privity deprives this court of jurisdiction. *See Southern Cal. Fed. Sav. & Loan Ass'n. v. United States*, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005) ("[S]tanding and privity of contract with the government are questions of subject matter jurisdiction."); *see also Flexfab*, 424 F.3d at 1259 (noting that the issue of whether plaintiff had privity as a third-party beneficiary raised issues of standing on which a court must "properly focus[] prior to and independent of the particular merits of the case"); *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Absent privity between [plaintiffs] and the government, there is no case."). In essence, in the absence of privity, the government has not consented to be sued, and a plaintiff thus lacks standing, which is, of course, a threshold jurisdictional matter and amenable to a motion under RCFC 12(b)(1).

Here, there was no direct privity between R&J and the government. The complaint concedes as much, alleging that the government "contracted with certain drought-afflicted *States* for the distribution" of NDM to livestock producers. Compl. 2 (emphasis added); *see also* Compl. 3 ("The Program was administered . . . by and between quasi-government and/or corporations [*i.e.* the CCC] . . . and drought-afflicted States and Native American tribes."). The documents submitted in support of the complaint confirm this, demonstrating a contractual relationship between the government and the State of Utah, and

---

[5](...continued)
1 and 3-5, we do not discuss the sovereign act doctrine nor need we explore the distinction. It is sufficient that, as explained above, plaintiff lacked privity with the government. As to count two, which survives this ruling, we reserve judgment as to whether the government's argument may be meritorious.

5

in turn, between the state and R&J.  There is no indication, however, of any contractual relationship between the United States and R&J.  Rather, R&J's dealings were with the Utah Department of Agriculture and Food.

We recognize that, under the terms of the agreement between the federal government and the participating states, the USDA retained limited enforcement responsibility with respect to unauthorized use of NDM by third parties.  That, however, does not create a contractual relationship between the government and R&J.  "An agency's performance of its regulatory or sovereign functions does not create contractual obligations." *D&N Bank v. United States*, 331 F.3d 1374, 1378-79 (2003) (citing *New Era Constr. v. United States*, 890 F.2d 1152, 1155 (Fed. Cir. 1989)).  Furthermore, the fact that the states imposed the same restrictions as the federal government on the use of NDM did not transform sovereign states into mere intermediary administrative agents of the federal government, thus establishing privity, as R&J suggests.  *See B&G Enter., Ltd. v. United States*, 220 F.3d 1318, 1323 (Fed. Cir. 2000) ("[T]he federal government's conditioning a state or locality's receipt of federal funds on the state's taking a particular action does not make that state or locality an agent of the federal government.").  Nor does the fact that the state did not first take delivery of the NDM, which was delivered directly to R&J, create a contractual relationship between R&J and the federal government.  These deliveries, made at the state's request, do not create privity where otherwise there is none.  In sum, we see no basis for jurisdiction over plaintiffs direct contractual claims where there was no privity of contract between plaintiff and the government.

### B.     *Alternatives to Privity of Contract*

In lieu of a direct contractual relationship with the government, R&J seeks to establish jurisdiction through either of two alternative means: an implied-in-fact contract or third-party beneficiary status.  *See Maher v. United States*, 314 F.3d 600, 603 n.1 (Fed. Cir. 2002) ("[Plaintiffs] can establish privity of contract through an implied-in-fact contract with the United States, or by establishing that they are intended third-party beneficiaries of a contract with the United States.") (citing *First Hartford Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999)).  As explained below, only under the latter theory can plaintiff possibly establish jurisdiction.

#### 1.     Implied-in-Fact Contract

The first of the two substitutes for direct privity, an implied-in-fact

contract, is simply a judicial recognition of an agreement that was not formally executed. "An implied-in-fact contract is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* (quoting *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996)).

A court will not, however, imply an agreement between two parties when there was none, nor can a court imply privity when there was no meeting of the minds between the particular parties. Rather, the necessary elements of an implied-in-fact contract are the same as those of an express contract. *Id.* (citing *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)). A plaintiff must show "(1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." *D&N Bank v. United States*, 331 F.3d 1374, 1377 (2003) (citing *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995)).[6]

As already discussed above, there was no agreement between plaintiff and defendant. Rather, the United States entered into agreements with the various states, which in turn entered into agreements with producers such as R&J. That R&J acceded to certain conditions imposed by the State of Utah—regardless of whether those terms were similar or identical to those previously imposed by the federal government on the state—does not constitute a mutuality of intent between R&J and the federal government. Furthermore, there was no consideration paid by R&J in exchange for the NDM it received.[7] Similarly, despite R&J's unsupported allegations in its complaint, we see no evidence of an offer by either party and an acceptance by the other. *See Elliott v. United States*, 96 Fed. Cl. 666, 668 (2011) ("'[I]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.'") (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189

---

[6] When an implied contract involves the United States, a fourth requirement is added: "the government representative whose conduct is relied upon must have actual authority to bind the government in contract." *D&N Bank*, 331 F.3d at 1378. Here, we need not reach the fourth prong, for the first three are clearly lacking.

[7] We are not persuaded by R&J's argument that the removal of NDM from the government's storehouses was a benefit that serves as consideration.

(1936)); *cf. Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss for failure to state a claim). We will not imply privity between R&J and the government when the facts do not permit us to do so.

2. Third-Party Beneficiary Status

R&J contends that it can establish jurisdiction as an intended third-party beneficiary of a contract with the United States. *See Maher*, 314 F.3d at 603 n.1 ("[Plaintiffs] can establish privity of contract . . . by establishing that they are intended third-party beneficiaries of a contract with the United States."). Based on the record before us, we cannot say that plaintiff is not a third-party beneficiary.

Third-party beneficiary status is an "exceptional privilege," *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001), that "should not be liberally granted." *Flexfab*, 424 F.3d at 1259. To establish third-party beneficiary status, "a party must 'at least show that [the contract] was intended for his direct benefit.'" *Glass*, 258 F.3d at 1354 (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)); s*ee also Flexfab*, 424 F.3d at 1259 ("'In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly.'") (quoting *Glass*, 258 F.3d at 1354).[8]

The government argues that R&J cannot show it was an individually, directly intended beneficiary of the contract between Utah and the federal government. We note, however, that in *Sullivan v. United States*, the Federal Circuit made it clear that a party may be a third-party beneficiary if it is a member of the *class* intended to benefit from a contract. 625 F.3d 1378, 1380 (Fed. Cir. 2010) ("While the third party does not need to be specifically identified in the contract, third party beneficiary status can only be bestowed on those parties that 'fall within a class clearly intended to be benefited' by the contract.") (quoting *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997)).

---

[8] Plaintiff's concern that this rule applies only to shareholder suits is put to rest by *Flexfab*, which reiterates and discusses the rule in the context of government contracting.

Here, the wording of the standard sales agreement seems to indicate that it was intended to benefit entities such as R&J by furnishing them with NDM. *See* Def. Mot. to Dismiss App. 1 ("[T]he Commodity Credit Corporation (CCC) agrees to sell to the State of _____ Nonfat Dry Milk (NDM) *for distribution to livestock producers* suffering from drought conditions.") (emphasis added). We agree with the government that the exhibits submitted by R&J do not give any additional support to plaintiff's argument but merely indicate that the federal government retained a role in enforcing limits on the use of the NDM. *See* Pl. Supp. Rep. App. B-D. Nevertheless, given the state of the record and the current posture of the litigation, we cannot conclusively rule that plaintiff is not in the class of third-party beneficiaries contemplated by the contract.

Ultimately, R&J has been unable to show it was in privity of contract with the government—either directly or through an implied contract. Accordingly, we are without jurisdiction over R&J's first, third, and fourth causes of action.[9] Whether we have jurisdiction over R&J's second count for breach of a third-party beneficiary contract is unclear for the present.[10]

II. <u>Equitable Estoppel</u>

Finally, we consider whether we have jurisdiction to entertain plaintiff's sole remaining claim. In count five of its complaint, R&J alleges that, in reliance on the government's conduct, it entered into agreements to receive and subsequently sell the NDM, and that the government's repudiation resulted in damage to R&J. Plaintiff characterizes this count as "equitable estoppel." The government, however, disputes whether count five of the complaint is truly equitable estoppel, over which we have jurisdiction, or whether it is actually a thinly veiled claim for *promissory* estoppel, over which we do not

---

[9] Our dismissal of two of them—breach of implied-in-fact contract and breach of written contract—is self-explanatory on the basis of our reasoning above. The other, breach of the covenant of good faith and fair dealing, only arises where there is a contractual relationship. There is none here.

[10] Similarly, the current record does not enable us to say whether R&J has failed to state a claim upon which relief may be granted. We note that it is not clear what right was vested in R&J by the contract between Utah and the United States or how the government, which continued to deliver NDM under that contract, has breached its contract.

9

have jurisdiction. *See LaMirage, Inc. v. United States*, 44 Fed. Cl. 192, 199-200 (1999). For the reasons set out below, we lack jurisdiction over this aspect of plaintiff's claim.

Equitable estoppel "is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled." *Am. Airlines, Inc. v. United States*, 77 Fed. Cl. 672, 679 (2007) (citations omitted). For example, a party who acquiesced to certain conduct could not later claim that conduct was wrongful.[11]

In contrast, promissory estoppel is essentially an equitable cause of action whereby one who reasonably relies on another's promise can subsequently require that person to make good on his promise. It applies to situations involving a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." Restatement (Second) of Contracts § 90(1) (1981); *see Steinberg v. United States*, 90 Fed. Cl. 435, 444 (2009). As with other forms of equitable relief, we have no jurisdiction over claims of promissory estoppel. *See Steinberg*, 90 Fed. Cl. at 443 ("[T]his court has no jurisdiction over promissory estoppel claims.") (citing *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 58 Fed. Cl. 542, 546 (2003)). To put it differently, promissory estoppel—which seeks a judicially enforced performance of a promise—is no different than an implied-in-law contract, another type of claim over which we have no jurisdiction. *Lawndale Restoration Ltd. Partnership v. United States*, 95 Fed. Cl. 498, 507 (2010) ("'Promissory estoppel is another name for an implied-in-law contract claim.'") (quoting *Hubbs v. United States*, 20 Cl. Ct. 423, 427(1990)); *see also Steinberg*, 90 Fed. Cl. at 443 ("Promissory estoppel . . . requires the court find an implied-in-law contract, a claim for which the United States has not waived

---

[11] It is, in fact, an open question whether equitable estoppel is available as a defense against the government. *See Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1581 (Fed. Cir. 1993) (stating that an assertion of equitable estoppel against the government was not barred as a matter of law); *JANA, Inc. v. United States*, 936 F.2d 1265, 1270 (Fed. Cir. 1991) ("It is also not entirely clear whether the defense of estoppel is still available against the government."); *see Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60-61 (1984) (declining to rule whether the defense of equitable estoppel could be raised against the United States).

its sovereign immunity.").

Accordingly, we must determine which type of estoppel is pled here, regardless of how it is labeled in the complaint. A useful distinction when contrasting the two types of estoppel is to determine whether the claim is employed offensively or defensively:

> [P]romissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield.

*Knaub v. United States*, 22 Cl. Ct. 268, 276 (1991) (quoting *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981)); *see also Lawndale*, 95 Fed. Cl. at 507 ("[T]he court repeatedly has held that equitable estoppel is a defensive doctrine, not the basis of a cause of action.") (citations omitted).

Here, R&J is attempting to allege estoppel to create a cause of action. R&J alleges that it relied to its detriment on the government's conduct and is thus entitled to monetary damages. Regardless of how R&J labels the claim in the complaint, this is a claim of promissory estoppel. "This court has no jurisdiction to hear a claim for promissory estoppel, and to the extent plaintiff substantively asserts the elements for promissory estoppel, dismissal for lack of jurisdiction under 12(b)(1) is appropriate." *Steinberg*, 90 Fed. Cl. at 444 (internal citations omitted). Accordingly, we grant the government's motion to dismiss this aspect of the complaint for lack of jurisdiction.

## CONCLUSION

For the reasons stated above, we grant in part defendant's motion to dismiss counts 1-4 of plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction. The parties are ordered to confer and propose to chambers by May 13, 2011, suggested dates for a telephone status conference to discuss further proceedings.

                 s/Eric G. Bruggink
                 Eric G. Bruggink
                 Judge